IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DON ANGELO DAVIS,<br><br>    Plaintiff,<br><br>    v.<br><br>R. HUTCHESON,<br><br>    Defendant. | No. 2:20-CV-0077-DJC-DMC-P<br><br><br>FINDINGS AND RECOMMENDATIONS |

        Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court are Defendant's motion for summary judgment, ECF No. 53, Plaintiff's opposition, ECF No. 54, and Defendant's reply, ECF No. 55. For the reasons discussed below, the Court finds that Defendant is entitled to judgment as a matter of law.

        The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the

1  moving party

2  . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

5  Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

6  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.

1  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
2  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
3  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
4  1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the
5  judge, not whether there is literally no evidence, but whether there is any upon which a jury could
6  properly proceed to find a verdict for the party producing it, upon whom the onus of proof is
7  imposed." Anderson, 477 U.S. at 251.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff, Mr. Don Angelo Davis, names J. Hutchison as Defendant in the operative first amended complaint. See ECF No. 16, pg. 2.  Plaintiff alleges that Defendant Hutchison engaged in retaliation against Plaintiff in violation of the First Amendment. ECF No. 16, pg. 3. Plaintiff claims the alleged retaliation occurred due to Plaintiff filing a 602 Inmate/Parolee Appeal form (hereinafter referred to as "602") on March 25, 2019, in which Plaintiff alleged that while serving time in administrative segregation, he was not provided his legal paperwork for a separate, unrelated court case.  Id.; see ECF No. 53-2, pg. 97. Plaintiff alleges he required these documents to comply with a court-ordered legal deadline.  Id.

Plaintiff states:

> . . .Thereafter, on March 28t [sic] 2019, I was placed under escort, and taken to the Administrative Property Room, by Defendant Hutcheson, whom while in route, made passing references [to] the above stated appeal, and my legal property, that had been withheld beyond the standard 10 days, for persons placed in Administrative Segregation.

Id. (alteration to original) (referring to his previously-filed 602). Plaintiff alleges that inside the room were four boxes containing his personal belongings, and that Plaintiff was allowed to search through the boxes to locate his legal documents.  See id.  Plaintiff contends that two of the boxes were already opened and that his jar of coffee had been poured over the contents of the first two boxes.  Id. at 3-4.

/ / /

/ / /

3

Plaintiff states that, in light of this, he started looking for his original songs, movie manuscripts, book and personal photos. Id. at 4. He claims he found one page of his self-written book at the top of the first box, but was unable to locate the rest of the book nor his fan. Id. Plaintiff also claims he noticed rodent droppings on his personal belongings and that rodents had eaten his soup. Id. Plaintiff alleges he called for Defendant, and asked him if he knew where his book and fan were, since they were in Plaintiff's possession before he was placed in administrative segregation. Id. Plaintiff alleges Defendant gave him a cold stare, and stated "'I didn't see no Fan [sic], and I didn't take your Book [sic].'" Id.

Plaintiff contends that Defendant's response persuaded Plaintiff that Defendant was retaliating against Plaintiff for filing the aforementioned 602. Id. Plaintiff contends he later spoke with a mental health psychiatrist about his book and inquired whether the psychiatrist would talk to Defendant on Plaintiff's behalf about the book and aforementioned legal documents. Id. at 4-5. According to Plaintiff, the psychiatrist informed Plaintiff that Defendant reiterated that he had not taken the book. Id. at 5. Plaintiff believes that due to Plaintiff filing the 602, Defendant retaliated against him by taking his book and fan, and by pouring coffee on his belongings. Id. at 4-5. He further contends that Defendant was the only person who could have taken and damaged his property because Plaintiff did not have a cell mate for three years, and Plaintiff does not believe Officer Matthews, who inventoried and packed up Plaintiff's property when Plaintiff was placed in administrative segregation, was involved in the alleged harm. Id. at 5.

## II. THE PARTIES' EVIDENCE

### A. Defendant's Motion

Defendant's motion for summary judgment is supported by the sworn declarations of Howard E. Moseley, ECF No. 53-1, Christian M. Georgely, ECF No. 53-2, and J. Hutchison, ECF No. 53-3, as well as various documents attached thereto.

///

///

4

1  ///

2          Defendant relies on the following exhibits attached to the declarations of Moseley

3  and Georgely:

| | | |
|---|---|---|
| | Moseley Exhibit A | Inmate/Parolee Appeals Tracking System – Level III, Appellant Appeal History: CDCR Number: E31889. ECF No. 53-1, pgs. 5-7. |
| | Moseley Exhibit B | Third Level Appeal Decision, TLR Case No.: 1802405 and attachments. ECF No. 53-1, pgs. 8-22. |
| | Moseley Exhibit C | Inmate Appeals Office Modification Order and attachment. ECF No. 53-1, pgs. 23-59 |
| | Moseley Exhibit D | Third Level Appeal Decision, TLR Case No.: 1912569 and attachments. ECF No. 53-1, pgs. 60-84. |
| | Georgely Exhibit A | Defendant's Interrogatories, Set One. ECF No. 53-2, pgs. 3-9. |
| | Georgely Exhibit B | Defendant's Requests for Admissions, Set One. ECF No. 53-2, pgs. 10-19. |
| | Georgely Exhibit C | Remote Video-Recorded Deposition of Don Angelo Davis, Monday, November 7, 2022, and attachments. ECF No. 53-2, pgs. 20-106. |

        In support of the motion for summary judgment, Defendant has also filed a statement of undisputed facts, ECF No. 53-5, in which Defendant asserts the following facts are established:

        1.    <u>Facts Related to the March 28, 2019, Incident</u>

        At all times relevant to the complaint, Plaintiff was an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) and was incarcerated at High Desert State Prison. <u>See</u> ECF No. 16. At all times relevant to the complaint, Defendant was a Correctional Officer serving as a Legal/Property Officer at High Desert's Administrative Segregation Unit. <u>See</u> ECF No. 53-3, pg. 1. The book Defendant allegedly took was written by hand on scrap pieces of wax-lined, cardboard boxes that were used as food containers for meals. <u>See</u> ECF No. 16, pgs. 3-6; ECF No. 53-2, pgs. 58-62. Plaintiff admits that no document exists to confirm the existence of his cardboard book, nobody read the book, and he did not tell anyone

about the book. See ECF No. 53-2, pgs. 62-64. The last time Plaintiff saw the cardboard book was on March 1, 2019. See id. at 39-42, 53, 66-67. Plaintiff admits that the fan was returned to him after he was transferred to Pelican Bay State Prison. See id. at 57-58.

On March 1, 2019, officials at High Desert transferred Plaintiff from his General Population housing assignment in Facility D to Administrative Segregation in Facility Z. See id. at 35-36, 92-93. A non-party officer inventoried and packed Plaintiff's property, which Plaintiff did not witness. See id. at 38-42, 53, 66-67. Plaintiff's personal property, including the fan, was still located in his Facility D housing unit when Plaintiff was removed to Administrative Segregation. See id. at 39-40. The non-party officer identified on a Cell Search Receipt that High Desert officials confiscated and disposed of several items of Plaintiff's property, including items of trash. See id. pgs. 72-74. The non-party officer packed Plaintiff's property in cardboard boxes that were taped closed. See id. at 40-41. Plaintiff's property boxes were transferred to an Administrative Segregation property room. See id. at 86, 103-104. Food products and containers that cannot be sealed or closed are, and should be, disposed of before placing the property in storage. See ECF No. 53-3, pg. 3.

While in Administrative Segregation, Plaintiff requested that he be provided legal materials relating to a pending writ of habeas corpus. See ECF No. 53-2, pg. 41-42. On March 28, 2019, Defendant attempted to help locate Plaintiff's legal paperwork. See id. at 49. After going through the boxes, Defendant could not locate the requested legal materials. See id. at 50; ECF No. 53-3, pg. 3. Plaintiff did not witness Defendant going through his property boxes. See id. at 66-67. Defendant placed the boxes containing Plaintiff's property in a fully-enclosed, vacant cell, escorted Plaintiff to the vacant cell with his property, and had Plaintiff go through the boxes to look for his legal materials. See id. at 45, 47-48; ECF No. 53-3, pg. 3. Plaintiff noticed the fan and cardboard book were missing, with the exception of one piece of cardboard. See id., at 47-48, 51-53. Plaintiff also noticed holes in the bottom of the boxes, mice droppings, evidence that rodents bit and ate food items, and spilled coffee. See id.; ECF No. 16, pgs. 3-4.

After noticing that the cardboard book was missing, Plaintiff requested Defendant's help, and asked him about his book and fan, to which Defendant replied that he did

not know about Plaintiff's book nor fan. See id. at 53-54; ECF No. 16 pgs. 3-4; ECF No. 53-3, pg. 3. After answering Plaintiff's question, Defendant left the cell to attend to his other tasks and responsibilities. See id. at 56; ECF No. 53-3, pg. 3. Plaintiff continued to look through the boxes, and after locating his legal materials in the property boxes, a non-party officer escorted Plaintiff back to his Administrative Segregation cell. See id. at 56-57.

### 2. Facts Related to Exhaustion of Administrative Remedies

On April 1, 2019, while housed in Administrative Segregation at High Desert, Plaintiff submitted Appeal Log No. 1909259 (HDSP-Z-19-01221), in which he complained of the events on March 28, 2019. See ECF No. 53-1, pgs. 3, 40. Plaintiff did not state that his missing property was related to any retaliation. See id. at 40, 42. On April 15, 2019, the first level of review partially granted Appeal Log No. 1909259 (HDSP-Z-19-01221) as relating to Plaintiff's fan. In the course of that review, Plaintiff and the non-party officer that packed Plaintiff's property were interviewed, and Plaintiff's fan was located in Facility D at High Desert. See id. at 50-51.

On May 14, 2019, Plaintiff appealed Appeal Log No. 1909259 (HDSP-Z-19-01221) to the second level of review, adding the allegation that Defendant took his book, but failing again to assert a retaliation claim. See id. 38-39, 41, 43. On June 18, 2019, the second-level response for Appeal Log No. 1909259 (HDSP-Z-19-01221) denied Plaintiff's appeal. See id. at 52-53.

On July 22, 2019, Davis appealed Appeal Log No. 1909259 (HDSP-Z-19-01221) to the third level of review, and stated that he was dissatisfied. See id at 41, 43 On October 16, 2019, the third level of review response for Log No. 1909259 (HDSP-Z-19-01221) was issued, and partially granted the appeal. See id. at 38-39. The response noted

> [T]here is no indication that suggests whether the fan which was collected was placed with the appellant's personal property. Further, there is no indication that "Property Officer Hutcheson" was interviewed regarding the claims that coffee was poured over the appellant's personal property or that there was rodent droppings within the property. Therefore, this appeal is granted in part.

ECF No. 53-1, pg. 38.

7

1  The third-level of review directed Defendant to be interviewed about whether he dumped coffee
2  on Plaintiff's property boxes and whether there were rat droppings in the boxes.  See ECF No. 53-
3  2, pgs. 38-39.  Defendant denied both claims.  See id.

      **B.**     **Plaintiff's Opposition**

In his opposition, Plaintiff argues that summary judgment is inappropriate because:

> . . .Defendant J. Hutchison's motivation to retaliate cus [sic] of Plaintiff's particular prison agrievance [sic] claim that indicated clear intent, where C.D.C.R. third level response clearly states that Plaintiff may have legal merit, and the fact that Defendant already admitted by say, [sic] that he has immunity any way and was willing to lowball settle with Plaintiff in pilot project in March of 2022.

ECF No. 54, pg. 1.

Plaintiff cites no evidence to support his opposition, provides no exhibits, and does not offer a separate statement of disputed facts.

### III.  DISUCSSION

Defendant argues summary judgment is appropriate because: (1) Plaintiff failed to exhaust his administrative remedies; (2) Plaintiff's claim fails on the merits; and (3) Defendant is entitled to qualified immunity. See ECF No. 53, pg. 8.  For the reasons discussed below, the Court finds Defendants' first two arguments persuasive, and thus the Court does not address qualified immunity.

      **A.**     **Exhaustion of administrative Remedies**

Defendant argues that Plaintiff failed to exhaust his administrative remedies.  See ECF No. 53, pg. 8.  The Court agrees.

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit.  See 42 U.S.C. § 1997e(a).  This requirement is mandatory regardless of the relief sought.  See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)).  Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies while the lawsuit is pending.  See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).  The

1  Supreme Court addressed the exhaustion requirement in <u>Jones v. Bock</u>, 549 U.S. 199 (2007), and
2  held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint
3  because lack of exhaustion is an affirmative defense which must be pleaded and proved by the
4  defendants; (2) an individual named as a defendant does not necessarily need to be named in the
5  grievance process for exhaustion to be considered adequate because the applicable procedural
6  rules that a prisoner must follow are defined by the particular grievance process, not by the
7  PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not
8  all, claims are unexhausted.  The defendant bears burden of showing non-exhaustion in the first
9  instance.  <u>See</u> <u>Albino v. Baca</u>, 747 F.3d 1162, 1172 (9th Cir. 2014).  If met, the plaintiff bears the
10 burden of showing that the grievance process was not available, for example because it was
11 thwarted, prolonged, or inadequate.  <u>See</u> <u>id.</u>

12          The Supreme Court held in <u>Woodford v. Ngo</u> that, in order to exhaust
13 administrative remedies, the prisoner must comply with all of the prison system's procedural
14 rules so that the agency addresses the issues on the merits.   548 U.S. 81, 89-96 (2006).  Thus,
15 exhaustion requires compliance with "deadlines and other critical procedural rules."  <u>Id.</u> at 90.
16 Partial compliance is not enough.  <u>See</u> <u>id.</u>  Substantively, the prisoner must submit a grievance
17 which affords prison officials a full and fair opportunity to address the prisoner's claims.  <u>See</u> <u>id.</u>
18 at 90, 93.  The Supreme Court noted that one of the results of proper exhaustion is to reduce the
19 quantity of prisoner suits "because some prisoners are successful in the administrative process,
20 and others are persuaded by the proceedings not to file an action in federal court."  <u>Id.</u> at 94.
21 When reviewing exhaustion under California prison regulations which have since been amended,
22 the Ninth Circuit observed that, substantively, a grievance is sufficient if it "puts the prison on
23 adequate notice of the problem for which the prisoner seeks redress. . . ."  <u>Griffin v. Arpaio</u>, 557
24 F.3d 1117, 1120 (9th Cir. 2009); <u>see also</u> <u>Sapp v. Kimbrell</u>, 623 F.3d 813, 824 (9th Cir. 2010)
25 (reviewing exhaustion under prior California regulations).

26          A prison inmate in California satisfies the administrative exhaustion requirement
27 by following the procedures set forth in §§ 3084.1-3084.8 of Title 15 of the California Code of
28 Regulations.  In California, inmates "may appeal any policy, decision, action, condition, or

9

omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). The inmate must submit their appeal on the proper form, and is required to identify the staff member(s) involved as well as describing their involvement in the issue. See Cal. Code Regs. tit. 15, § 3084.2(a). These regulations require the prisoner to proceed through three levels of appeal. See Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.2, 3084.7. A decision at the third formal level, which is also referred to as the director's level, is not appealable and concludes a prisoner's departmental administrative remedy. See id. Departmental appeals coordinators may reject a prisoner's administrative appeal for a number of reasons, including untimeliness, filing excessive appeals, use of improper language, failure to attach supporting documents, and failure to follow proper procedures. See Cal. Code Regs. tit. 15, §§ 3084.6(b). If an appeal is rejected, the inmate is to be provided clear instructions how to cure the defects therein. See Cal. Code Regs. tit. 15, §§ 3084.5(b), 3084.6(a). Group appeals are permitted on the proper form with each inmate clearly identified, and signed by each member of the group. See Cal. Code Regs. tit 15, § 3084.2(h).

In certain circumstances, the regulations make it impossible for the inmate to pursue a grievance through the entire grievance process. See Brown v. Valoff, 422 F.3d 926, 939 n. 11 (9th Cir. 2005). Where a claim contained in an inmate's grievance is characterized by prison officials as a "staff complaint" and processed through a separate confidential process, prison officials lose any authority to act on the subject of the grievance. See id. at 937 (citing Booth, 532 U.S. at 736 n. 4). Thus, the claim is exhausted when it is characterized as a "staff complaint." See id. at 940. If there are separate claims in the same grievance for which further administrative review could provide relief, prison regulations require that the prisoner be notified that such claims must be appealed separately. See id. at 939. The court may presume that the absence of such a notice indicates that the grievance did not present any claims which could be appealed separate from the confidential "staff complaint" process. See id.

Under McBride v. Lopez, 807 F.3d 982, 987-88 (9th Cir. 2015), a prison grievance system may be deemed "unavailable," excusing a plaintiff's lack of exhaustion, if two conditions

are met. First, a prisoner "must provide a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance." Id. at 987. If the prisoner makes this showing, he must then demonstrate that his belief was objectively reasonable; that is, "there must be some basis in the record from which the district court could determine that a reasonable prisoner of ordinary firmness would have understood the prison official's actions to threaten retaliation if the prisoner chose to utilize the prison's grievance system. Only then will the threat render the prison grievance system effectively unavailable." Id. at 987-988 (internal citations omitted). Furthermore, "[h]ostile interaction with prison officials, even when it includes a threat of violence, does not necessarily render the grievance system 'unavailable.'" Id. at 988. "[G]eneral and unsubstantiated fears about possible retaliation" are also insufficient. Rodriguez v. Cty. of L.A., 891 F.3d 776, 794 (9th Cir. 2018). Finally, "[a]lthough circumstantial evidence can be sufficient to overcome summary judgment in a retaliation case, such evidence must be specific." Sealey v. Busichio, 696 F. App'x 779, 781 (9th Cir. 2017) (citing McCollum v. Cal. Dep't of Corr. & Rehab., 647 F.3d 870, 882 (9th Cir. 2011)). References to unnamed officers engaging in various activities at unspecified times do not satisfy this requirement. See id.

Defendant argues that because Plaintiff did not allege a claim of retaliation in his original administrative grievance, and only added the allegation that Defendant took his book and fan without referring to retaliation in his appeal to the second level, Plaintiff did not exhaust the administrative grievance process for his retaliation claim. ECF No. 53, pg. 17; see ECF No. 53-2, pgs. 99-102.  In support of his position, Defendant cites the California Code of Regulations: "[a]dministrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602." Cal. Code Regs. tit. 15, § 3084.1(b) (2019).

Defendant's position is persuasive.  Plaintiff did not allege a retaliation claim in his initial 602 and added this new issue only in his third level of appeal.  As such, Plaintiff failed to properly exhaust his retaliation claim and, for this reason alone, Defendant is entitled to judgment as a matter of law.

///

1  ///

2  ///

3  ///

   **B.**  **Merits of Plaintiff's Retaliation Claim**

   Defendant also argues that Plaintiff's retaliation claim fails on the merits. See ECF No. 53, pg. 8. The Court agrees.

   In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

   **1.**  Adverse Action

   Defendant argues that Plaintiff cannot establish that Defendant took adverse action against Plaintiff. See ECF No. 53, pg. 21. Plaintiff has alleged the following in support of his retaliation claim: (1) one page of Plaintiff's manuscript was on the top of a box of his belongings, but the rest of the pages were not; (2) Defendant told Plaintiff "I didn't see no fan, and I didn't take your book" and gave him a cold stare; (3) Defendant told a mental health psychiatrist that Defendant didn't take the book; (4) Plaintiff has no reason to doubt Officer Mathews, who inventoried Plaintiff's property before giving it to Defendant; and (5) Plaintiff had not had a cell

mate for 3 years before the book was allegedly taken, and Defendant was the only one in a position to take Plaintiff's book. ECF No. 16, pgs. 3-5. As discussed above, Plaintiff has offered no evidence in support of any of these contentions.

Plaintiff's contention is belied by his deposition testimony. Specifically, at his deposition Plaintiff admitted that he has no evidence to show that Defendant took his book. See Exhibit C to Georgely declaration, ECF No. 53-2. Plaintiff also admitted that the last time he saw the cardboard book was on March 1, 2019, before he was transferred to Administrative Segregation, and that the next time he saw his property, several unknown officials had already inventoried and handled his property. See id. Plaintiff further concedes that he has no way of knowing what item of property the non-party officer who inventoried his property considered to be trash. See id. The Court agrees with Defendant that Plaintiff's assertion that it must have been Defendant who took his property is based entirely on speculation and not proof.

There is simply no evidence establishing that Defendant, as opposed to some other non-party prison official, is responsible for the loss of Plaintiff's property. As such, Plaintiff cannot establish that Defendant took any adverse action against him. The failure of this element of Plaintiff's claim is a sufficient reason to grant summary judgment in Defendant's favor.

2.      Causal Link Between Plaintiff's Protected Rights and Adverse Action

Defendant also argues there is no evidence of a connection between the alleged retaliation and Plaintiff's first amendment rights. ECF No. 53, pg. 22. Again citing to Plaintiff's deposition, Defendant notes that Plaintiff admitted he did not tell anybody of the book (including Defendant), Plaintiff never saw Defendant destroy his property, and Plaintiff's proffered evidence is based on mere speculation. See Exhibit C to Georgely declaration, ECF No. 53-2, pgs. 54, 62-64.

In Wood, the 9th Circuit held that a motion for summary judgment was correctly granted for a First Amendment retaliation claim when the evidence to support that claim was based on mere speculation. See Wood v. Yordy, 753 F.3d 899, 904-05 (9th Cir. 2014). While Plaintiff does note that Defendant made reference to a separate 602 Plaintiff filed prior to the 602s filed in this claim, Plaintiff puts forth no evidence that Defendant took any action against

Plaintiff in light of this filing. See ECF No. 16, pgs. 3-4. Because Plaintiff cannot establish a causal link between a protected activity and Defendant's alleged conduct, he cannot prevail on his claim of retaliation.

### 3. Chilling Effect

Defendant further contends that Plaintiff's First Amendment rights were not chilled by Defendant's conduct. ECF No. 53, pg. 24. In particular, Defendant notes that Plaintiff continued filing 602s even after discovering that his book was missing and alleging Defendant's involvement. Id.

In Arizona Students' Association, the 9th Circuit determined that the test for whether alleged retaliatory conduct chills free speech is objective. See Arizona Students' Ass'n v. Arizona Bd. of Regents, 824 F.3d 858, 868 (9th Cir. 2016). The test asks whether the alleged conduct "'would lead ordinary [persons] ... in the plaintiffs' position' to refrain from protected speech." Id. at 868 (alteration to original). While Defendant's alleged conduct may lead ordinary persons in the Plaintiff's position to refrain from protected speech, the Court need not speculate in this regard because the evidence here shows that Plaintiff continued to engage in protected activity by filing inmate grievances. Plaintiff cannot establish that his rights were chilled.

### 4. Penological Purpose

Defendant argues that disposal of Plaintiff's cardboard book, which appeared to be trash, served a legitimate penological purpose, specifically that of maintaining cleanliness in the prison. ECF No. 53, pg. 25. At his deposition, Plaintiff admitted that the alleged book was made out of cardboard that was previously used as food containers. See Exhibit C to Georgely declaration, ECF No. 53-2, pgs. 60-62. By discarding such cardboard, Defendant argues that he would have been serving the penological interest of keeping the prison clean and sanitary. See ECF No. 53, pg. 25. Defendant cites Pratt, in which the 9th Circuit held "'. . . federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment,' especially with regard to 'the fine-tuning of the ordinary incidents of prison life, a common subject of prisoner claims' under § 1983." Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995) (quoting Sandin v. Conner, 515 U.S. 472, 483 (1995)). The Court affords such deference

here and concludes that the evidence shows that Plaintiff's book, written on discarded carboard food containers, could objectively appear to have been trash which was properly discarded in furtherance of a legitimate penological goal.

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that Defendants' motion for summary judgment, ECF No. 53, be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 26, 2023

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE